UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

JOSE LUIS ARTEAGA,

                       Plaintiff,

         – against –

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

**MEMORANDUM DECISION AND ORDER**

19-CV-04684 (AMD)

-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff[1] challenges the Social Security Commissioner's decision that he was not disabled for the purpose of receiving Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons explained below, I deny the defendant's motion, grant the plaintiff's motion in part and remand the case for further proceedings.

## BACKGROUND

The plaintiff applied for SSI on July 1, 2016, alleging disability beginning May 16, 2016 from diabetes, hypertension, high blood pressure, arthritis, respiratory disease and neuropathy. (Tr. 203-11, 231.) In a notice dated September 2, 2016, the SSA informed the plaintiff that his application had been denied. (Tr. 127-32.)

The plaintiff submitted a request for review by an Administrative Law Judge ("ALJ") on September 26, 2016. (Tr. 133.) A hearing took place before ALJ Michael Friedman on June 25, 2018. (Tr. 99.) The ALJ issued a decision on July 30, 2018, in which he determined that the

---

[1] The plaintiff's name is spelled differently in different places. In the complaint, his last name is spelled "Arteaga." (*See* ECF No. 1 at 1.) His last name is also spelled "Artegea" (ECF No. 21 at 1) and "Artega" (*see* docket caption) in other places. Because "Arteaga" is the spelling that appears in the complaint and in the medical records contained in the administrative transcript (*see, e.g.*, Tr. 325), it is the spelling I use in this decision.

claimant was not disabled within the meaning of the Social Security Act.  (Tr. 8-23.)
Specifically, the ALJ concluded that although the plaintiff suffered from the severe medical
impairments of diabetes, diabetic neuropathy, asthma, hypertension and obesity, these
impairments did not meet or equal the severity of impairments listed in the applicable Social
Security regulations.  (Tr. 13-14.)  The ALJ also concluded that the "claimant's medically
determinable mental impairment of anxiety disorder" was "nonsevere."  (*Id.*)  The ALJ found
that the plaintiff's residual functional capacity ("RFC") permitted him to do "sedentary work as
defined in 20 CFR 416.967(a) except that he can sit up to 6 hours in an 8-hour day, stand and/or
walk for no more than 2 hours in an 8-hour day, and lift and/or carry up to 5 pounds frequently
and 10 pounds occasionally," and that he was "restricted to occupations that do not involve
concentrated exposure to pulmonary irritants."  (Tr. 15.)  Relying on the testimony of a
vocational expert, the ALJ determined that although the plaintiff could no longer work as a
cashier, he could perform other jobs that exist in significant numbers in the national economy.
(Tr. 21-22.)

On August 8, 2018, the plaintiff submitted a request for review to the Appeals Council,
and submitted additional evidence: Office Treatment Records from Dr. Zlatnik (April 13, 2015);
Office Treatment Records/Pain Management Notes from NY Spine Care Interventional Pain
Management (February 8, 2016); Prescription History Records from Dana Pharmacy (April 1,
2016 to October 10, 2016); Handwritten Office Treatment Records from an unknown family
medicine source (May 3, 2016 to May 6, 2016); Office Treatment Records/Physician
Authorization for diabetic shoes from Prohealth Care Associates (May 27, 2016); Office
Treatment Records/Cardiac Evaluation from St. Francis Hospital (June 2, 2016 to January 26,
2018); Office Treatment Records/EMG from Dr. Zlatnik (June 10, 2016 to June 16, 2016);

Radiology Report from Stand Up MRI of Queens (June 12, 2016); Office Treatment

Records/Neurology Evaluation from Prohealth Care Associates (July 12, 2016); Laboratory Test

Report from Shiel Medical Laboratory (September 9, 2016); Office Treatment Records from Dr.

Kim (January 24, 2017 to September 1, 2017); Radiology Report from Dr. Ding Yang (March

23, 2017); Radiology Report from Main Street Radiology (November 6, 2017 to December 4,

2017); Temporary Work Excuse from NY State Office of Temporary and Disability Assistance

(December 13, 2017); Office Treatment Records from Criterions EHR (July 19, 2018);

Emergency Department Records from Interfaith Medical Center (October 1, 2018); Medical

Statement for Housing Assistance from Interborough Developmental and Consultation Centers

(December 14, 2018).  (Tr. 2, 193.)

  In a letter dated June 7, 2019, the Appeals Council informed the plaintiff that his request

for review was denied, making the ALJ's findings and conclusions the "final decision" of the

Commissioner of Social Security.  (Tr. 1-5.)  The Appeals Council also explained that it did not

consider the evidence the plaintiff had submitted on appeal because it did "not show a reasonable

probability that it would change the outcome of the decision," and that two of the documents he

submitted did "not relate to the period at issue."  (Tr. 2.)

  The plaintiff filed this action on August 5, 2019.  (ECF No. 2.)  On February 12, 2020,

the Commissioner moved for judgment on the pleadings.  (ECF No. 16.)  The plaintiff filed a

cross-motion for judgment on the pleadings on April 15, 2020.[2]  (ECF. No. 23.)  The

Commissioner filed a reply on June 3, 2020.  (ECF No. 27.)

---

[2] The plaintiff initially attempted to file his motion on April 13, 2020.  (*See* ECF No. 19.)  However, due
to technical difficulties with the electronic filing system, a complete version of the motion and related
briefing was not filed until April 15, 2020.  (ECF No. 22.)

## STANDARD OF REVIEW

A district court reviewing the Commissioner's final decision is limited to determining "whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). The district court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). When the Commissioner's determination is supported by substantial evidence, "the decision must be upheld, even if there also is substantial evidence for the plaintiff's position." *Cerqueira v. Colvin*, No. 14-CV-1134, 2015 WL 4656626, at *11 (E.D.N.Y. Aug. 5, 2015) (internal quotation marks omitted). A district judge may not "substitute [her] own judgment for that of the [ALJ]," even if she would have made a different decision. *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991).

"Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,'" the Court will not defer to the ALJ's determination "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984))

(alteration in original).  Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).

## DISCUSSION

The plaintiff makes multiple challenges to the proceedings below.  He claims that the ALJ should have developed the administrative record further and that his evaluation of the plaintiff's credibility was improper.  The plaintiff also faults the ALJ's determination that the plaintiff's mental health impairments are not "severe," as well as the way the ALJ considered the effect of the plaintiff's obesity in the five-step analysis.  The plaintiff challenges the ALJ's step three and step five analyses—the determination at step three that the plaintiff did not meet the Commissioner's listing 11.14, or equal the Commissioner's listings 1.02, 4.11, 8.04 or 14.09, and for relying at step five on the vocational expert's response to an inappropriate hypothetical.  Finally, the plaintiff argues that the Appeals Council should have considered the evidence he submitted with his appeal.

The defendant responds that the ALJ's conclusions were supported by substantial evidence and a sufficient evidentiary record.  The defendant also argues that the Appeals Council correctly determined that the plaintiff's additional evidence would not have changed the ALJ's decision.

## I.    Administrative Record

The plaintiff cited anxiety as an impairment (ECF No. 24 at 18) and testified that he suffered from what he describes as "jerking legs" (Tr. 103).  Dr. Koo, the plaintiff's treating doctor, wrote in treatment notes that the plaintiff went to the ER for panic attacks twice in 2017,

and in September of 2017, complaining of jerking legs.  (Tr. 440.)  The plaintiff testified that, according to his doctors, his "jerking legs" might be related to his anxiety and panic attacks.  (Tr. 103.)  However, it does not appear that the records of these visits are part of the record that the ALJ reviewed.  Rather, the ALJ seems to have seen only the discharge papers.  (Tr. 423-426.)

In determining that the plaintiff's mental health impairment was not "severe," the ALJ observed that there was "no evidence of any limitations in attention, concentration, memory, thought processes or thought content," "no evidence upon which to find that the claimant suffers any limitations for interaction with family members, the general public, supervisors, or coworkers," and "no objective evidence pointing to any limitation in [concentrating, persisting, or maintaining pace.]"  (Tr. 13-14.)  Similarly, in evaluating the plaintiff's RFC, the ALJ noted that the record did not include "mental status results" from Dr. Koo.  (Tr. 16.)  In determining the plaintiff's RFC, the ALJ observed that the plaintiff had just "a single episode of hospitalization for" "jerking legs," and that there was no finding about what caused the "jerking legs."  (Tr. 19.)

When there are gaps in the administrative record, ALJs have "an affirmative obligation to develop [it;] even when the claimant is represented by counsel."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citation omitted).  The ALJ did not have the benefit of the plaintiff's complete set of hospital records when he made his decision about the plaintiff's impairments.  *See Rodriguez v. Astrue*, No. 07-CV-534, 2009 WL 637154, at *17-20 (S.D.N.Y. Mar. 9, 2009) (remanding because ALJ did not fill gaps in the evidentiary record).  On remand, the ALJ should obtain the records from the plaintiff's 2017 hospital visits, including the one for his complaint of "jerking legs," and consider whether those records change his conclusion.

## II.     Evaluation of Subjective Symptoms[3]

If a plaintiff's allegations are not supported by "objective medical evidence, the ALJ

must engage in a[n evaluation of subjective symptoms]." *Meadors v. Astrue*, 370 F. App'x 179,

183 (2d Cir. 2010).  "In making a[n evaluation of subjective symptoms], the ALJ must consider

seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and

intensity of [the] claimant's pain and other symptoms; (3) precipitating and aggravating factors;

(4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has

taken to alleviate pain or other symptoms; (5) any treatment, other than medication, the claimant

has received; (6) any other measures the claimant employs to relieve pain or other symptoms;

and (7) other factors concerning the claimant's functional limitations and restrictions as a result

of pain or other symptoms."  *Gallagher v. Colvin*, 243 F. Supp. 3d 299, 306-07 (E.D.N.Y. 2017)

(citing 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)).  An ALJ's evaluation of subjective

symptoms "must contain specific reasons for the finding . . ., supported by the evidence in the

case record, and must be sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the individual's statements and the

reasons for that weight."  *Atwater v. Astrue*, No. 10-CV-420, 2012 WL 28265, at *6 (W.D.N.Y.

Jan. 5, 2012), *aff'd*, 512 F. App'x 67 (2d Cir. 2013).

In evaluating the plaintiff's RFC, the ALJ concluded that "the claimant's statements

concerning intensity, persistence and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record."  (Tr. 19.)  However, the

---

[3] The plaintiff cites to SSR 96-7p, which on March 16, 2016, was superseded by SSR 16-3p.  *See* 81 F.R. 14166-72 (March 16, 2016), as republished at 82 F.R. 49462-68 to clarify applicability date (Oct. 25, 2017).  SSR 16-3p eliminated the use of the term "credibility" from the agency's sub-regulatory policy, and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Id.*  The relevant regulations remain unchanged.

ALJ did not discuss the seven factors, or explain why the plaintiff's testimony was inconsistent with the record.  Thus, remand is appropriate.  *See Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013) (finding legal error when the ALJ did not explicitly refer to or discuss any of the factors for evaluating subjective symptoms).  On remand, the ALJ should make a specific evaluation of subjective symptoms and identify any inconsistencies between the plaintiff's testimony and the rest of the record.

### III.    Step Two Analysis

In his step two analysis, the ALJ determined that the plaintiff has the severe impairments of diabetes, diabetic neuropathy, asthma, hypertension, and obesity, but that his "anxiety disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere."  (Tr. 13.)  To reach this conclusion, the ALJ properly invoked the "paragraph B" criteria for evaluating mental health impairments.  *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 6 (N.D.N.Y. 2015).  As discussed above, however, the ALJ did not complete the evidentiary record with respect to the plaintiff's mental health impairment.  On remand, the ALJ should determine whether the information in the medical records affects his conclusion that the plaintiff's mental health impairment was not severe.

### IV.    Obesity

The plaintiff argues that the ALJ did not give appropriate consideration to his obesity in his decision.  In fact, the ALJ identified obesity as a severe impairment, acknowledged that there are no listing criteria specific to evaluating obesity impairments, explained that obesity might be severe in connection with other impairments, and took these factors "into account in reaching the conclusions herein at the second through fifth steps of the sequential disability evaluation

process." (Tr. 15.)  Moreover, the ALJ cited the plaintiff's weight in the step four analysis.  (Tr. 16-17, 20.)

## V.      Step Three Analysis

The plaintiff also asserts that the ALJ should have determined that he met the Commissioner's listing 11.14 or equaled listings 1.02, 8.04, 4.11 or 14.09.  On remand, the ALJ should evaluate whether any of these listings is met or equaled in light of any relevant new information in the outstanding medical records.

## VI.     Hypothetical to the Vocational Expert

During the hearing, the ALJ asked the vocational expert about jobs available to someone with "a sedentary physical RFC but restricted against jobs involving concentrated exposure to pulmonary irritants and further restricted to jobs involving simple, routine, repetitive type tasks and requiring only occasional contact with supervisors, coworkers and the public."  (Tr. 113.) The plaintiff asserts that the ALJ's hypothetical did not account for all his limitations, namely that he has "handling and fingering problems due to his neuropathy."  (ECF No. 24 at 26.)  "A vocational expert's testimony does not constitute substantial evidence where the ALJ asks about a hypothetical claimant whose limitations do not actually mirror those of the claimant."  *Baker v. Berryhill*, No. 17-CV-8433, 2019 WL 1062110, at *35 (S.D.N.Y. Feb. 19, 2019), *report and recommendation adopted*, 2019 WL 1059997 (S.D.N.Y. Mar. 6, 2019); *see also Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) ("the Commissioner may rely on a vocational expert's opinions concerning a hypothetical claimant so long as the ALJ's hypothetical mirrors the plaintiff's RFC and is based on substantial evidence").

As discussed above, the ALJ should obtain additional records, and determine whether those records affect his RFC determination.  The ALJ should reassess his conclusions at steps four and five of the analysis accordingly.

## VII.   Evidence Submitted on Appeal

The plaintiff submitted the following records on appeal: Office Treatment Records from Dr. Zlatnik (April 13, 2015); Office Treatment Records/Pain Management Notes from NY Spine Care Interventional Pain Management (February 8, 2016); Prescription History Records from Dana Pharmacy (April 1, 2016 to October 10, 2016); Handwritten Office Treatment Records from an unknown family medicine source (May 3, 2016 to May 6, 2016); Office Treatment Records/Physician Authorization for diabetic shoes from Prohealth Care Associates (May 27, 2016); Office Treatment Records/Cardiac Evaluation from St. Francis Hospital (June 2, 2016 to January 26, 2018); Office Treatment Records/EMG from Dr. Zlatnik (June 10, 2016 to June 16, 2016); Radiology Report from Stand Up MRI of Queens (June 12, 2016); Office Treatment Records/Neurology Evaluation from Prohealth Care Associates (July 12, 2016); Laboratory Test Report from Shiel Medical Laboratory (September 9, 2016); Office Treatment Records from Dr. Kim (January 24, 2017 to September 1, 2017); Radiology Report from Dr. Ding Yang (March 23, 2017); Radiology Report from Main Street Radiology (November 6, 2017 to December 4, 2017); Temporary Work Excuse from NY State Office of Temporary and Disability Assistance (December 13, 2017); Office Treatment Records from Criterions EHR (July 19, 2018); Emergency Department Records from Interfaith Medical Center (October 1, 2018); Medical Statement for Housing Assistance from Interborough Developmental and Consultation Centers (December 14, 2018).  (Tr. 2.)

When a claimant submits additional evidence, the Appeals Council will review it if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5).  The plaintiff argues that the Appeals Council should have reviewed the additional evidence he submitted with his appeal.  I agree with respect to some, but not all, of the records.

The Appeals Council declined to consider records dated October 1, 2018 and December 14, 2018 because they "do[] not relate to the period at issue."  (Tr. 2.)  Because these records postdate the ALJ's decision, the Appeals Council properly disregarded them.

The Appeals Council also declined to consider another 15 documents, finding that they did not show a "reasonable probability" of "chang[ing] the outcome of the decision."  (Tr. 2.)

The plaintiff submitted treatment records from Dr. Kim dated January 24, 2017 to September 1, 2017.  (Tr. 54-96.)  These records are an expansion of the treating records from Dr. Kim that the ALJ did consider.  (*See* Tr. 325-331.)  The additional information is a series of Dr. Kim's follow-up notes, which all essentially say that the plaintiff suffered from neuropathy and relied on prescription pain medication to manage the pain.  (Tr. 92-96.)  These records bear a "reasonable probability" of changing the outcome because, in addition to showing the intensity and ongoing nature of the plaintiff's pain, they suggest that he had pain all over his body, not just in his legs.  This is significant because a determination that the plaintiff was limited in his ability to use his hands and fingers might render him "disabled" under the five-step analysis, especially in light of the vocational expert's testimony.

The Appeals Council properly determined that the following records did not warrant review: Office Treatment Records/Pain Management Notes from NY Spine Care Interventional

Pain Management (February 8, 2016); Handwritten Office Treatment Records from an unknown family medicine source (May 3, 2016 – May 6, 2016); Laboratory Test Report from Shiel Medical Laboratory (September 9, 2016); Radiology Report from Dr. Ding Yang (March 23, 2017); Radiology Report from Main Street Radiology (November 6, 2017 to December 4, 2017); Temporary Work Excuse from NY State Office of Temporary and Disability Assistance (December 13, 2017).

The NY Spine Care notes in the record contain only a waiver for an e-prescription from the NYS Department of Health.  (Tr. 97-98.)  They do not shed light on the plaintiff's condition.  (*See id.*)  The handwritten treatment notes from an unknown family medicine doctor—which say that the plaintiff has asthma and takes medicine for diabetes and pain—are cumulative to the evidence the ALJ considered.  (Tr. 43-44); *See Quintana v. Berryhill*, No. 18-CV-00561, 2019 WL 1254663, at *15 (S.D.N.Y. Mar. 19, 2019) ("[C]ourts will not remand where the new evidence describes symptoms and conditions already contained in the record, relies on the same information previously considered by the ALJ or fails to show that the claimant's impairments were more severe than previously diagnosed during the relevant time period.").  Similarly, the Shiel lab test, which showed that the plaintiff has diabetes (Tr. 52-53), is duplicative of other records.  The radiology reports are also cumulative.  Dr. Yang's Report consists of x-rays of the plaintiff's feet.  (Tr. 45-47.)  The Main Street Report diagnoses degenerative disc disease (Tr. 49), which the ALJ considered (*see, e.g.*, Tr. 16-18).  Since the ALJ determined that the plaintiff could do "sedentary work," it is particularly unlikely that this information would change the outcome.  Finally, the state temporary disability form contains no specific medical information.  (Tr. 41-42.)

The plaintiff also submitted records to the Appeals Council that do not appear in the administrative transcript: Treatment records from Criterions EHR, treatment records from Dr. Zlatnik and a radiology report from Stand Up MRI of Queens are each listed in the transcript's index, but seem to have been replaced with documents reading "replaced with [filler page] because it references another claimant."[4]  (Tr. 38-40.)  Neither the transcript nor the index include: Prescription History Records from Dana Pharmacy (April 1, 2016 to October 10, 2016); Office Treatment Records/Physician Authorization for diabetic shoes from Prohealth Care Associates (May 27, 2016); Office Treatment Records/Cardiac Evaluation from St. Francis Hospital (June 2, 2016 to January 26, 2018); Office Treatment Records/EMG from Dr. Zlatnik (June 10, 2016 to June 16, 2016); Office Treatment Records/Neurology Evaluation from Prohealth Care Associates (July 12, 2016).  Without reviewing these records, I cannot evaluate whether they were properly classified as not showing a reasonable probability of changing the ALJ's decision.  On remand, the ALJ should consider each of these records, determine if they are relevant and probative, and include them in his reassessment of the plaintiff's application if appropriate.

---

[4] From the previous version of the administrative transcript that was filed on the docket, it appears that these were someone else's medical records.  (ECF No. 11 at 42-44.)

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted in part.  The defendant's motion for judgment on the pleadings is denied.  The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
          March 22, 2021

14